Haywood, J.
delivered the opinion of the Court.
This was an action of debt brought in the Circuit Court of Montgomery County for $ 1,000 founded on a negotiable instrument made payable to George West or order.
To the declaration there were pleas, payment and set off, replications and issues, with leave to either party to give any special matter in evidence which would be good in bar, the same as if pleaded. Then is added a special plea of set off for the sum of $753.13, due from George West to Mc’Clure the defendant; to which is replied that before the note became due West transferred the same by delivery to a certain John Hoyse, without saying for a valuable consideration ; that Hoyse afterwards and before the note became due by indorsement and delivery, transferred the same to Jesse A. Brinson & Co. for value received; and that at the time the said Jesse had no notice of the set off, Brinson and Co. indorsed to William E. Williams, and he indorsed to Robert Brinson, for whose use the suit is brought, all before due, and without notice of the set off. To this there is a demurrer.
At a subsequent term was filed a plea of release from West to Mc’Clure, by which he is acquitted of all suits, actions, and demands arising on the said note, with an averment that said West is the only person in interest in said note.
Replication, that West is not the person in interest, because the same 'was transferred first by delivery of the said West to Hoyse, and that the same was indorsed as above, before due, &c.
This part of the pleading was not closed upon the record.
At the trial term, and before the jury was sworn, West appeared in ' proper person, and moved the Court to dismiss the suit. He offered to prove that he was the person who held the interest in the note; that he had not parted with the same, and that Brinson had no right to use his name in this action.
It was objected that Brinson had the right to sue; that he had acquired the note by purchase from West, and that he could prove the fact.
The Court was of opinion that the motion involved matter of fact proper for a jury to try, and overruled the motion, to which exception is taken.
*166 On the trial Brinson offered to prove the indorsements on the note. It was objected that he should prove that the note had been negotiated by West to Hoyse, or that he had parted with it for a valuable consideration to the holder or some one of the indorsers, which objection the Court overruled. It was proved to- the jury that at the time of making the note West was indebted to Mc’Clure in some unsettled demands, which, when settled, should be indorsed on the note as a credit.
It was proved that West delivered these papers to Hoyse for safe-keeping, with other papers, West being about to make a voyage down the river. On cross-examination of the witness who proved this fact, he stated that the reason he had for thinking the note was delivered for safekeeping was because Hoyse gave a receipt for them, and that nothing was named of a contract about the note; witness had understood that West and Hoyse were jointly concerned in two boats, and their lading, which West took charge of to New Orleans.
Another witness proved that he had been possessed of the receipt of Hoyse; that the same is lost, but the receipt expressed upon its face, that he, Hoyse, would account to West for the note, &c., and at the same time witness got the receipt from West, West gave him an order on Mc’Clure for any amount of money Mc’Clure might owe on the note; and for him not to pay said note to any other person than witness, West, or his order; that at the time of giving this order, neither West, witness, nor Mc’Clure knew where the note was. On producing the order, he instructed Mc’Clure not to pay any other person, and then requested payment to himself ; Mc’Clure objected paying, but said witness had better garnishee him ; that he would owe on the note to West about $ 700. West was largely indebted to the witness.
Penrice owed Yarborough, and Jesse Brinson owed Penrice, and gave Penrice the note in question, who gave it to Yarborough ; Mc’Clure went to Yarborough to pay it, but complained of the conduct of West in parting with the note without allowing a credit of about $ 300, which West owed him. Yarborough and Mc’Clure disagreed, and some time after Mc’Clure told him, Yarborough, that he was glad they had disagreed in that settlement, as now he would get clear of paying the note.
The defendant offered West as a witness to prove that he had never transferred said note, and that it was paid to him, West. This was objected to, and the objection sustained.
The defendant then introduced records of judgments, Mc’Clure v. West, under the plea of set off, with some other documents not material to be taken into consideration.
The Court charged the jury that if they found from the evidence that the note had been indorsed, and that the plaintiff had possession thereof in the course of trade, as between the defendant and himself, it would be *167 prima facie evidence of a consideration, and, unless the contrary was proved, be sufficient to sustain the action under the name of the obligee.
If they found from the proofs that West delivered the note to Hoyse, and he afterwards put it in circulation in the course of trade, and it came by indorsement to Brinson, West must suffer first, as he trusted most. Though as between West and Hoyse, an adequate consideration would have to be proved, as there was no assignment from West to Hoyse; and perhaps if Hoyse had sued Mc’CIure, the maker, inasmuch as there was not a chasm, but in fact no indorsement, the want of such indorsement' would subject any holder, and of course, the plaintiff, to all the equity that would be against it in the hands of the nominal plaintiff, until the time defendant had notice it was in the hands of a third person claiming the benefit thereof; so that such set off must be allowed as is proved to be due prior to the notice given the obligor that the note was in the hands of Brinson. This charge was excepted to. The jury found a set off of $ 300, and a balance of debt $ 700 25.
The Court was moved for a new trial, which was denied.
To those who have contemplated the subject with any attention it cannot but be apparent that when courts of law have assumed equity jurisdiction, a train of evils have followed the resolution, and in some instances have been of such gigantic magnitude as to have forced a relinquishment of it.
Defence in ejectment, by a trust estate in the defendant is one instance, and others might be cited. In this state the observation is not without weight, that the assumption of such jurisdiction by courts of law is the invention and creature of modern times, subsequent to the independence of the United States and to the Act of 1778, declaring what laws shall be in force; so that if we follow precedents which have been set by English courts, we advance one step further than the Legislature hitherto authorized.
In the time of the Revolution, and before, the assignor of a bond or covenant or other unnegotiable paper might release or dismiss his suit at pleasure, and the only effect would be to become liable to the action of the assignee, who, by virtue of the assignment, was entitled to damages for a breach of the covenant implied from the assignment; that is to say, that the obligee would concede to the assignee the use of his name, and would permit him to receive the money when recovered, and would not release the debt or receive payment of it from the obligor.
Some time afterwards it began to be considered in England that a court of equity would protect the assignment of a bond, and consider the assignee as owner when the assignment was made for a valuable consideration, and to save litigation and expense the courts of law had better assume the whole jurisdiction and settle all matters in dispute between the *168 obligor and assignee, the obligor and assignor, and between the obligee and assignee at once. The theory was captivating, but concealed from view the consequences, which were that the judge of a court of law must exercise jurisdiction and ascertain facts, as the chancellor did by the examination of the evidence himself.
A precedent was established of judges becoming the triers of fact, against the maxim of the common law; the jury alone can respond to questions of fact. How far it may be followed towards the subversion of this excellent mode of trial it belongs only to future times to disclose ; but surely the precedent is not entitled to much partiality from the tribunals in a country where the trial by jury is held in the highest veneration, as the best preservative of public attachment and private independence.
Whether the decisions of this State have ever sanctioned these recent encroachments upon chancery jurisdiction, this Court will not say; but certainly, heretofore, the precedent, if any, has not extended to any other than unnegotiable instruments, which, because of the legal invalidity of an assignment indorsed, and the absolute nullity at law of such assignments, has called for the interposition of chancery jurisdiction,— a reason which is' wholly inapplicable to negotiable instruments where the assignment is legalized, and. where, if made, there can be no occasion for the interference of a Chancery Court.
What are the effects produced by this assumption of equity powers ? How shall disputes be settled between the payee and alleged assignee, and how is the obligor to be affected by them ? If the obligee may apply for a dismission of the suit brought in his name, and may be opposed on the ground of an assignment or delivery over for a valuable consideration of an unassignable instrument to the alleged assignee, then it mpst be inquired when may he make such application, if at any time; then what if he make it unexpectedly, when the assignee is not prepared with evidence to show the equitable validity of the assignment to himself? must time be given to the assignee to make proof of the facts, and must he be indulged with continuances from time to time, as in other cases, till his testimony can be procured ? What must the obligor do in the interim ? must he wait upon the Court continually, or let their controversies be settled, and when settled, be ready to plead instanter ? Or, in case of absence, be liable to a judgment by default? Or must he plead? If the latter, who shall reply to his plea, the assignee or the obligee ? — the latter of whom may confess his plea, while the other denies it. If these difficulties be surmounted, and the cause put to issue, when shall the trial come on ? Before the dispute is settled between the obligee and assignee, or afterwards? If before, will the successful party, for instance the obligee, be bound by a verdict given upon pleadings and verdict by the assignee in exclusion of himself? If after, must the obligee wait with all his witnesses till it suits the con *169 venience of the obligor and assignee to have the dispute settled ? Or must his witnesses he discharged in the interim, or be again called forward when the other dispute shall be settled? These are great difficulties, and they all result from the enlargement of jurisdiction' by courts of law, so as to embrace equitable powers. Suppose, however, that the examination shall be submitted to a jury, then the pleas made by the obligor, if he favor the pretensions of the assignee, may be such as will not bring into controversy the points made by the obligee, or thus the latter will be at the mercy of the obligor and assignee, who may combine to defeat him, and between the obligee and assignee may sometimes be a combination to defraud the obligor. This, also, is another difficulty, and it flows from the assumption of equitable powers by courts of law. What is the result of these reflections? Why, certainly, if we here follow the English courts in their innovations, that we shall not go beyond them, and take jurisdiction of matters which our courts have not as yet done. If there be any English precedent of equitable jurisdiction exercised by a common law court on the delivery of a negotiable paper for value, without indorsement, it exceeds the reason for the original interference of equity, which proceeded upon the nullity of the assignment of unassignable paper, and exceeds also any precedent hitherto established, perhaps, either there or here.-
If indorsable paper is delivered over without indorsement, and is intended to vest in the assignee, as the equitable owner, for what reason has it not been indorsed ?
It is not like the case of a covenant, where the indorsement would be a nullity, except in equity. The meaning must be, in general, that the bailee may receive the money as agent for the obligee, but not that he should indorse it over for his own use; and it is in preservation of this design that the means are withheld of making the indorsement. If an indorsee will receive the note from him, it cannot but be with full knowledge that he has no legal authority ; and if it be possible to establish an equitable ownership, in opposition to this obstacle, it should be upon the most unquestionable evidence, both as to bearing and credit.
Without giving any specific opinion upon the right of a court of law to take jurisdiction in the latter instance as well as in the -former, it .can be said with confidence in the present case that of evidence to raise an equity, complete evidence should be required of the fact that the delivery over of a negotiable paper without indorsement was accompanied, in lieu of in-dorsement, with a’ valuable consideration. The latter requisite being omitted in the charge of the Court, may have misled the jury by giving them a wrong view of the law, and in such case there ought to be a new trial, that the law may be correctly stated. The Court wish to proceed cautiously and to take time, but can now give it as their impression that the equitable ownership of negotiable paper is not a subject of legal remedy, *170 and if no precedent shall be established of adjudications in this State heretofore made to that effect, it is probable that these expressions will become too deep to be effaced.
Reverse the judgment of the Circuit Court, and remand the cause to that Court, to be further proceeded in.